UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD McDUFF,

    Plaintiff,

v.

KRISTEN JONES, MAGEN OAKS,
and RICKEY COLEMAN,

    Defendants.
_____/

Case No. 4:23-cv-11739
District Judge F. Kay Behm
Magistrate Judge Kimberly G. Altman

### REPORT AND RECOMMENDATION TO DENY DEFENDANT OAKS'S MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION (ECF No. 14)

I.    Introduction

This is a prisoner civil rights case. Plaintiff Richard McDuff (McDuff), proceeding *pro se* and *in forma pauperis*, is suing defendants Kristen Jones (Jones), Magen Oaks (Oaks) and Rickey Coleman (Coleman) under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. (ECF No. 34). Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 16).

On October 12, 2023, Oaks filed a motion for summary judgment on the basis of exhaustion, (ECF No. 11), which was followed by McDuff filing a first amended complaint as of right on October 31, 2023, (ECF No. 13). Oaks' first

1

motion for summary judgment was therefore denied as moot, (ECF No. 18), and on November 3, 2023, Oaks filed a second motion for summary judgment on the basis of exhaustion, (ECF No. 14). McDuff has since amended his complaint again, (ECF No. 34), correcting the identity of Coleman, but has otherwise not changed his allegations against the defendants.

For the reasons that follow, the undersigned recommends that Oaks's second motion for summary judgment, (ECF No. 14), be DENIED. A scheduling order will also issue separately.[1]

## II.    McDuff's Allegations

According to the second amended complaint, McDuff alleges that he was prescribed a "no milk no cheese" medical diet while incarcerated. (ECF No. 34, PageID.315). He began to suffer serious and painful reactions to his diet and was prescribed medication to treat his symptoms. (*Id.*). He determined on his own that the milk supplement he was being offered, soy milk, was the culprit of his reactions. (*Id.*).

McDuff alleges that he began experiencing this reaction around February 8, 2023, and on that date he wrote to his facility's health care to request a change in diet. (*Id.*, PageID.315-316). Despite filing twenty-four urgent kites and five

---

[1] Service documents for Coleman were sent by the U.S. Marshal Service on May 13, 2024, but have yet to be returned. (ECF No. 41).

grievances regarding the soy milk in his diet, dietician Kristen Jones and Healthcare Unit Manager Oaks did nothing to alter his diet or otherwise resolve the issue. (*Id.*). At different times it was suggested that McDuff either continue eating his food or stop eating the food that was causing him issues, but no other food was offered to replace the soy milk protein drink that was giving him problems. (*Id.*, PageID.315-336).

McDuff's symptoms, consisting of rashes and bowel problems, persisted until April 20, 2023, through no help from defendants, when the soy drink's manufacturer changed its ingredient formulation to exclude substances that were causing McDuff's reactions. (*Id.*, PageID.315).

### III.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that McDuff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

IV. Exhaustion of Administrative Remedies

A. Legal Standard

The PLRA requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42

4

U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC PD 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130 ¶ S (underscoring omitted).

6

"The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

B.   Application

McDuff lists five grievances in his second amended complaint that he says exhaust his claims against defendants. Four of these grievances—STF-350, STF-385, STF-150, and STF-159—appear on McDuff's Step III Grievance Report, which Oaks has attached to her motion. (ECF No. 14-3). None of these grievances list Oaks as a culpable party. Three do not contain the name of any defendant in this case, and one—STF-150—mentions only Jones by name. Oaks notes that she was the Step I reviewer on three of the grievances, "underscor[ing] the fact that she was not the subject of [those] grievance[s]" because "staff who may be involved in the issue being grieved shall not participate in any capacity in the grievance investigation, review, or response, except as necessary to provide information to the respondent." (ECF No. 14, PageID.154).

Defendants argue that the fifth referenced grievance, STF-410, "did not exhaust any claims because it does not appear on the Step III grievance report as having been pursued to Step III." (*Id.*, PageID.153). However, the exhibits attached to McDuff's response to Oaks's motion tell a different story.

7

McDuff has attached all of the relevant documents for STF-410 to his response. He filed the Step I grievance on April 24, 2023, with an incident date of April 20, 2023. (ECF No. 19, PageID.231). In the grievance, he lists both Oaks and Jones, and complains that he was not informed until April 20, 2023, that the soy milk formula had changed so that he could begin drinking it again. (*Id.*). He also complains that for over two months, his complaints and medical needs regarding the food and his reactions to it were ignored by them. (*Id.*).

STF-410 was denied at Step I, as MDOC considered McDuff's issues to be resolved. (*Id.*, PageID.233). McDuff appealed the grievance to Step II on May 10, 2023, and on June 5, 2023, having not received a timely response to his Step II appeal, he filed a Step III appeal of the initial denial. (*Id.*, PageID.234).

According to McDuff's sworn affidavit, MDOC sent him a Step II response on June 5, 2023, explaining that the Step I denial was upheld and that while MDOC's response was due on June 2, 2023, it was returned to the Warden's Office after staff had left for the weekend and was not sent to McDuff until June 5, 2023. (*Id.*, PageID.229). He did not in fact receive the Step II denial until June 6, 2023, at which time he refiled his Step III grievance with the necessary paperwork attached. (*Id.*).

On July 25, 2023, STF-410 was rejected at Step III for the reason that it was missing McDuff's *Step I* grievance and response. (*Id.*, PageID.242).

8

In her reply, Oaks says that STF-410 does not exhaust claims against Oaks because it was properly rejected at Step III for McDuff's failure to attach the required documents to his appeal. This argument misses the mark.

Properly rejected grievances do not exhaust an inmate's administrative remedies. *Woodford*, 548 U.S. at 95. But "the Court is not required to blindly accept the state's application of the procedural rule[s]." *Reeves v. Salisbury*, No. 11-CV-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), *report and recommendation adopted in relevant part*, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012).

As noted above, STF-410 was rejected for McDuff's failure to include his Step I grievance in his Step III response. The relevant MDOC Policy Directive cited for this rejection is MDOC P.D. 03.02.130. (ECF No. 19, PageID.242). Oaks has attached that directive to her motion. (ECF No. 14-2). However, neither Oaks nor the Step III rejection cite to a specific paragraph of the directive that would sustain a rejection on this basis. Instead, Oaks cites to the CSJ-247B form on which McDuff filed his Step II and III appeals, which states,

> The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step II and Step III.

(ECF No. 20, PageID.246 (citing ECF No. 19, PageID.234 (emphasis in original))).

9

This form is not an MDOC Policy Directive.  The only relevant provision of the actual MDOC Policy Directives, as provided by Oaks herself, states: "Grievances *shall not be rejected* or denied solely because the prisoner has not included with his/her grievance exhibits or other documents related to the grievance[.]" (ECF No. 14-2, PageID.161, MDOC P.D. 03.02.130 ¶ H (emphasis added)).

"[C]ourts reviewing the above language [of MDOC P.D. 03.02.130 ¶ H] have uniformly concluded the failure to include grievance responses in the Step III appeal does not preclude proper exhaustion." *Margosian v. Martison*, No. 1:21-CV-1061, 2023 WL 1442426, at *2 (W.D. Mich. Feb. 1, 2023) (collecting cases). *Margosian* and the cases cited therein, as well as MDOC P.D. 03.02.130 ¶ H, apply with full and equal force to the asserted requirement that a grievant attach his Step I grievance to a Step III appeal.  Not only is this requirement absent from the policy directive cited by the Step III reviewer and Oaks, but the only relevant paragraph of the policy directive says that failure to attach documents to a grievance is not a reason to reject a grievance.  Therefore, the MDOC's rejection of STF-410 for failure to attach grievances does not mean that McDuff's claims against Oaks are unexhausted.[2]

---

[2] There is also a genuine issue of fact, as McDuff's affidavit states that he did in fact attach his Step I documentation to the Step III grievance, and his Step III grievance paperwork indicates that he at least says he did.  However, this is not an

The Court is constrained to note that defense counsel has now been informed by several courts that a rejection for failure to attach documents to a grievance appeal does not preclude exhaustion. *See Margosian*, *supra*; *Fox v. Jenkins*, No. 4:21-CV-12950, 2022 WL 18107234 (E.D. Mich. Nov. 14, 2022), *report and recommendation adopted*, 2023 WL 22908 (E.D. Mich. Jan. 3, 2023); *Rose v. Cope*, No. 1:22-CV-891, 2024 WL 665997 (W.D. Mich. Jan. 12, 2024), *report and recommendation adopted*, 2024 WL 663690 (W.D. Mich. Feb. 16, 2024); *Fortenberry v. Fuciarelli*, No. 2:22-CV-12367, 2024 WL 1502256 (E.D. Mich. Mar. 5, 2024), *report and recommendation adopted sub nom. Fortenberry v. Kelley*, 2024 WL 1494744 (E.D. Mich. Apr. 4, 2024). Defense counsel should consider these decisions in whether to continue to advance this argument in future exhaustion motions.

V. Conclusion

For the reasons stated above, the undersigned recommends that Oaks's second motion for summary judgment, (ECF No. 14), be DENIED. A scheduling order will issue separately.

Dated: June 25, 2024  
Detroit, Michigan

s/Kimberly G. Altman  
KIMBERLY G. ALTMAN  
United States Magistrate Judge

---

issue of *material* fact, because as explained above failing to attach the documents to his Step III appeal does not provide a proper reason for MDOC to reject the grievance appeal.

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 25, 2024.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
